IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

V.                                              CRIMINAL NO. 1:23cr144-HSO-RPM-1

ARNETT JACKSON BONNER

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

Comes now Defendant Arnett Jackson Bonner who files this Motion to Dismiss Indictment. The Indictment charges Mr. Bonner with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Mr. Bonner contends that § 922(g)(1) is unconstitutional as applied to him in light of the United States Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Fifth Circuit's guidance in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) and *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), and the court's analysis in *United States v. Bullock*, No. 3:18-cr-165-CWR-FKB, 2023 WL 4232309 (S.D. Miss. June 28, 2023). He further contends and preserves for further review that § 922(g)(1) is unconstitutional under the Fifth Amendment to the United States Constitution because it violates the equal protection guarantee.

I.  **Factual background.**

On November 2, 2023, Mr. Bonner was charged by criminal complaint with a single count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) after firearms were found in his vehicle during a traffic stop in Jackson County, Mississippi. ECF No. 1. On November 29, 2023, the grand jury returned an indictment charging Mr. Bonner with the same. ECF No. 13. The indictment alleges that Mr. Bonner unlawfully and knowingly possessed a firearm on or about November 1, 2023. Mr. Bonner has a prior federal felony conviction from

1

2008; he completed his term of sentence in 2018. He has one other felony conviction for drug possession from 2005. He has had no other convictions since 2008.

## II. Legal Standard

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trail of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presents through a pretrial motion. *See Flores*, 404 F.3d at 325.

## III. Second Amendment Argument

Section 922(g)(1) criminalizes firearm possession for any person who has been convicted of a crime punishable for a term exceeding one year. Under the new framework announced in *Bruen*, § 922(g)(1) violates the Second Amendment as applied to Mr. Bonner.

### A. *Bruen* "fundamentally changed" the framework for analyzing Second Amendment challenges.

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST., amend. II. The Supreme Court has held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Under the new framework announced in *Bruen*, § 922(g)(1) violates the Second Amendment as applied to Mr. Bonner.

The Supreme Court set out "the standard for applying the Second Amendment" in *Bruen*:

2

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2129–30. In so holding, the Supreme Court rejected lower courts' use of means-end scrutiny in Second Amendment cases. *See id.* at 2125–27 & n.4 (abrogating *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012)). "To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen,* 142 S. Ct. at 2126. In other words, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

*Bruen* provides that when a court is required to analyze the "Nation's historic tradition of firearm regulation," two standards apply. *Bruen*, 142 S.Ct. at 2130-31. In some cases, the historical inquiry is "fairly straightforward." *Id.* at 2131. "For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131 (emphasis added). Where a challenged regulation addresses "unprecedented societal concerns or dramatic technological changes," courts need only find a "relevantly similar" regulation to justify a restriction on Second Amendment rights. *Id.* at 2132. In evaluating whether a historical regulation is distinctly or relevantly similar to the modern regulation being challenged, courts should look to "two metrics," addressed in *Heller* and *McDonald*: "*how* and *why* the regulations burden" Second Amendment rights. *Bruen*, 142 S. Ct. at 2132-33 (emphasis added). Additionally,

3

"whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are *central* considerations when engaging in an analogical inquiry." *Id.* at 2133 (internal punctuation and citations omitted) (emphasis in original).

The historical tradition test, then, requires more than a broad declaration that relies on generalities. The Supreme Court, in *Bruen*, engaged in a detailed analysis of statutes and regulations, giving priority to those in existence at the time the Second Amendment was ratified. *See id.* at 2136. The Court did so because, "when it comes to interpreting the Constitution, not all history is created equal." *Id.* at 2136. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634-35. Accordingly, courts must "guard against giving post enactment history more weight than it can rightly bear." *Id.* Historical evidence from the late nineteenth century and the twentieth century "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S. Ct. at 2154 & n.28; *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2267 (2022) (stating that "how the States regulated" when a constitutional Amendment was ratified is "the most important historical fact").

The Fifth Circuit has provided additional guidance for lower courts to utilize in analyzing the constitutionality of a statute under the *Bruen* framework. *Rahimi* holds that *Bruen* "fundamentally changed our analysis of laws that implicate the Second Amendment, rendering out prior precedent obsolete." *Rahimi*, 61 F.4th at 450 (internal quotation marks, alteration, and citation omitted). Courts in the Fifth Circuit, then, should follow *Rahimi*'s example of careful, in-depth analysis of potential historical analogues, giving greater weight to those analogues closest in time to the Second Amendment's ratification. *See id.* at 455-60. This analysis requires this Court

4

to analyze both "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2133 (quoted in *Rahimi*, 61 F.4th at 460).

The Fifth Circuit recently confirmed this approach to *Bruen* in *Daniels*, stating that courts must "hew closely to *Bruen*'s own reasoning and hold the government to its heavy burden." *Daniels*, 77 F.4th at 342. In *Daniels*, the Court explained that the Bruen historical analysis "requires both close attention to history and analogical reasoning. *Id.* To find a "tradition" of restricting Second Amendment rights, the Government must present evidence of "well-accepted limits" that "share a common 'why' and 'how'" with the current restriction – "they must both address a comparable problem (the 'why') and place a comparable burden on the rightsholder (the 'how')." *Id.* In other words, "[w]hat matters is whether a conceptual fit exists between the old law and the new." *Id.*

This Court has also held that *Bruen* requires the Government to meet its burden with specific historical analogues. *See Bullock*, 2023 WL 4232309, at *21-23. The Government may not rely on broad declarations related to "the ratifying conventions theory" or the proposition that some felonies were once punishable by death. *Id.* at *21-23.

The Second Amendment's plain text covers the conduct proscribed by § 922(g)(1), and the prosecution cannot meet its burden of establishing that this application of § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. Therefore, § 922(g)(1) is unconstitutional as applied to Mr. Bonner.

**B.  The Second Amendment's plain text covers possession.**

Applying *Bruen*'s standard, the Second Amendment's plain text covers the "possess[ion]" of a firearm that § 922(g)(1) criminalizes. 18 U.S.C. § 922(g)(1). The term "'[k]eep arms' was

simply a common way of referring to possessing arms." *Heller*, 554 U.S. at 583. Accordingly, Mr. Bonner's possession of a firearm is presumptively protected.

### C. Mr. Bonner is one of "the people" protected by the Second Amendment.

Mr. Bonner is also one of "the people" protected under the Second Amendment's plain text. Both *Heller* and *Bruen* begin their analysis with the presumption that "the people" means all people under the protective umbrella of the Constitution. *See Heller*, 554 U.S. at 580-81; *Bruen*, 142 S. Ct. at 2126, 2156. *Heller* holds that when the Constitution references the rights of "'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580-81 This means that there is a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans" *Id.* Likewise, *Bruen* reiterates that the Second Amendment guarantees to "all Americans" the right to keep and bear arms. *Bruen*, 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581).

The Supreme Court has adopted this reasoning because the phrase "the people" is a term of art found in the First, Second, Fourth, Ninth, and Tenth Amendments to the Constitution that applies broadly. *See Heller*, 554 U.S. at 579-80; *see also* U.S. CONST. amend. I (using "the people" in Assembly-and-Petition Clause); U.S. CONST. amend. IV (using "the people" in Search-and-Seizure Clause); U.S. CONST. amend. IX (providing that enumerated rights in the Constitution do not diminish "others retained by the people"); U.S. CONST. amend X (reserving all other powers not delegated to "the States respectively, or to the people.").

The Fifth Circuit has also adopted this reading of *Bruen* and *Heller*. *See Rahimi*, 61 F.4th at 453. As the Fifth Circuit explained in *Rahimi*, to limit "the people" protected by the Second Amendment's guarantee of the individual right to bear arms is to "turn[] the typical way of conceptualizing constitutional rights on its head" and would allow Congress to "remove

6

'unordinary' or 'irresponsible' or ' non-law abiding people' – however expediently defined – from the scope of the Second Amendment." *Id.* at 453. Being law-abiding is not a prerequisite to claiming the protection of the Second Amendment. To find that the Second Amendment applies only to "law-abiding citizens" would set it apart from the other individual rights set forth in the Bill of Rights and relegate it to the "second-class" status that the Supreme Court decried as unconstitutional. *Bruen*, 142 S. Ct. at 2156 (citing *McDonald*, 561 U.S. at 780 (plurality)).

Other district courts in this circuit have held that felons are also included among the people. *See Bullock*, 2023 WL 4232309, at *20-21; *United States v. LeBlanc*, Cr. No. 23-00045-BAJ-RLB, 2023 WL 8756694, *6 (M.D. La. Dec. 19, 2023). Accordingly, despite his conviction, Mr. Bonner is presumptively entitled to protection under the Second Amendment.

**D.  As applied to Mr. Bonner, § 922(g)(1) violates the Second Amendment.**

In this case, the distinctly similar standard applies. Section 922(g)(1) broadly addresses a general societal concern that has persisted since the eighteenth century: how society treats those members who violate the law, including whether those members retain their constitutional right to keep and bear arms. However, whether the court opts to utilize the "distinctly similar" or "relevantly similar" standard, § 922(g)(1) is unconstitutional as applied to Mr. Bonner. The Government cannot meet its burden because the nation's historical tradition of regulating firearms, even against felons, is incompatible with the total and permanent ban imposed by § 922(g)(1). There simply is no historical tradition of permanently stripping felons of their Second Amendment rights.

**1.  *Heller*'s dictum does not decide the question.**

*Bruen*'s holding must prevail over *Heller*'s *dictum*. *See Bullock*, 2023 WL 4232309, at *17-19. The Supreme Court in *Heller* did "not undertake an exhaustive historical analysis" when

it stated—in *dictum*, and without citation—that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which the Court described in a footnote as "presumptively lawful." *Heller*, 554 U.S. at 626–27 & n.26;[1] *see McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010) (plurality) (same); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (quoting same). The Fifth Circuit has described this language as "[d]icta in *Heller*." *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *accord, e.g.*, *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 686–87 (6th Cir. 2016) (en banc); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010).

*Bruen* "did not attempt to bolster [the] reasoning"—or lack of it—underlying *Heller*'s *dictum*. *See Dobbs*, 142 S. Ct. at 2271. Instead, *Bruen* now holds that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively *protects* that conduct," and the Government bears the burden to demonstrate that the Second Amendment regulation rests on the nation's historical tradition. 142 S. Ct. at 2126 (emphasis added). *Bruen*'s holding must prevail over *Heller*'s *dictum*. *See Heller*, 554 U.S. at 625 n.25 ("It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued."). So too must *Bruen*'s holding prevail over the Fifth Circuit's earlier analysis of § 922(g)(1).[2]

### 2. There is no historical tradition of permanently depriving people with felony convictions from exercising their Second Amendment rights.

---

[1] The parties in *Heller* did not brief the historical background for *Heller*'s "presumptively lawful" measures. The respondent sought to justify those measures by arguing they would satisfy means-end scrutiny—a justification that *Bruen* now forecloses. *See* Respondent's Br. at 57, *Dist. of Columbia v. Heller*, No. 07-290 (Feb. 4, 2008); *Bruen*, 142 S. Ct. 2125–27.

[2] This approach reconciles *Heller* and *Bruen*. At most, *Heller* states that felon-in-possession laws are "presumptively lawful." *Heller*, 554 U.S. at 626–27 & n.26. Accordingly, courts must still conduct a *Bruen* analysis.

Numerous scholars have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." C. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1374-79 (2009); C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century).

Then-Judge Barrett and other jurists have likewise concluded that "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451, 453-64 (7th Cir. 2019) (Barrett, J., dissenting) (surveying history; *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century."); *Folajtar v. Att'y Gen. of U.S.*, 980 F.3d 897, 914 (3d Cir. 2020) (Bibas, J., dissenting) ("[T]he issue of disarming felons is open. Precedent does not settle its historical limits. Rather, we must analyze the history ourselves and ask: Were all felons, dangerous and nondangerous alike, equally excluded from the Second Amendment? No, they were not."); *United States v. McCane*, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have *not* found evidence of longstanding dispossession laws.").

And the Government has agreed. Section 922(g)(1), the Government has said in pre-*Bruen* briefing, "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." U.S. Br. at *27–28, *United States v. Pettengill*, No. 10-2024, 2011 WL 1977759 (1st Cir. May 13, 2011) (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)). The Government's briefing has stated numerous times: "As for convicted criminals, Colonial societies do not appear to have categorically

9

prohibited their ownership of firearms." *E.g.*, U.S. Br. at *25, *United States v. Staten*, No. 10-5318, 2011 WL 1542053 (4th Cir. Apr. 25, 2011) (citing Marshall, *supra*, at 696–728). Not until *Bruen* was decided did the Government change its position.

One circuit court and multiple district courts (including two within this circuit) who have performed the type of rigorous historical analysis that *Bruen* requires have held that § 922(g)(1) is unconstitutional as applied. *See Range v. Attorney General United States of America*, 69 F.4th 96 (3d Cir. 2023) (prior felony conviction for state food stamp fraud); *United States v. Griffin*, No. 21-cr-00693, 2023 WL 9291564 (N.D. Ill., Nov. 30, 2023) (prior convictions for robbery, criminal trespass, and possession of controlled substances); *United States v. Quailes*, No. 1:21-cr-0176, 2023 WL 5401733 (M.D. Penn. August 22, 2023) (four prior felony drug convictions "involving the possession with intent to distribute heroin and cocaine"); *United States v. Forbis*, No. 23-cr-133-GKF, 2023 WL 5971142 (N.D. Okla. August 17, 2023) (two prior felony convictions for possession of methamphetamine and one felony conviction for DUI); *Bullock*, 2023 WL 4232309 (prior felony convictions for manslaughter and aggravated assault); and *LeBlanc*, 2023 WL 8756694 (prior felony convictions included armed robbery). In each of those cases, the Government failed to meet its burden to establish the existence of a historical tradition of disarming felons.

Most recently, multiple district courts held that the Government failed to meet its burden to establish that the felon in possession law imposed a comparable burden on Second Amendment rights. *See United States v. Williams*, Case No. 23-cr-20201-JEL-DRG (E.D. Mich. February 22, 2024); *United States v. Neal, et al.*, Case No. 20-cr-335, 2024 WL 833607 (N.D. Ill, Feb. 7, 2024) (finding § 922(g)(1) unconstitutional on its face and rejecting historical analogues disarming the

"untrustworthy" or those whose crimes resulted in capital punishment or estate forfeiture)[3]; *United States v. Taylor*, No. 23-cr-40001-SMY, 2024 WL 245556 (S.D. Ill., January 22, 2024) (finding § 922(g)(1) unconstitutional on its face and as applied); *LeBlanc*, 2023 WL 8756694; and *United States v. Prince*, No. 22-cr-240, 2023 WL 7220127 (N.D. Ill. November 2, 2023). In *Prince*, the district court found that the historical analogues supported categorical disarmament of groups who posed a risk to society, like felons. *See id.* at *8. Those historical analogues, however, did not support *permanent* disarmament, leading the court to conclude that "§ 922(g)(1) imposes a far greater burden on the right to keep and bear arms than the historical categorical exclusions from the people's Second Amendment right." This holding comports with *Bruen*'s requirement that the Government prove the existence of comparable historical analogues with respect to "how" those regulations limited the Second Amendment *See Bruen*, 142 S. Ct. at 2133 (holding that "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are *central* considerations when engaging in an analogical inquiry." (internal punctuation and citations omitted) (emphasis in original)).

Similarly, in this circuit, the *LeBlanc* court rejected the Government's argument that laws providing for capital punishment for felons were comparable historic analogues for § 922(g)(1). The district court held that this proposed analogue failed "*Bruen*'s 'how' axis" because "not all felons were put to death or permanently stripped of their 'estates' at the Founding, enabling at least some felons to re-possess firearms after they served their punishments." *LeBlanc*, 2023 WL 8756694, at *10-11.

---

[3] The *Neal* decision is a consolidated order for five distinct cases: *United States v. Neal*, Case No. 20-cr-335; *United States v. Coleman*, Case No. 21-cr-52; *United States v. Savage*, Case No. 21-cr-631; *United States v. Ortega*, Case No. 21-cr-636-3; and *United States v. Williams*, Case No. 22-cr-380.

Mr. Bonner's possession of a firearm is presumptively protected by the Constitution, and the Government cannot establish a historical tradition of completely and permanently stripping persons with felony convictions, like Mr. Bonner, of their Second Amendment rights.

### IV.   Equal Protection Argument

The Fifth and Fourteenth Amendments to the United States Constitution establish that "equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights" and that "in the administration of criminal justice, no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses." *Yick Wo v. Hopkins*, 118 U.S. 356, 367-68 (1886) (internal quotations omitted).  Federal laws are subject to strict scrutiny and may violate equal protection rights if they unevenly burden a fundamental right or target a suspect class.  *See, e.g., Heller*, 509 U.S. at 319.

Section 922(g)(1) burdens Mr. Bonner's fundamental right to keep and bear arms. Although the Fifth Circuit has previously declined to find that § 922(g)(1) burdens a fundamental right based on precedent that assumed the existence of historic precedent on the possession of firearms by felons, *see, e.g., United States v. Darrington*, 351 F.3d 632, 634-35 (5th Cir. 2003); *see also Heller*, 554 U.S. at 626, *Bruen* has since rendered this case law obsolete.  As discussed more fully above, Mr. Bonner has a fundamental right to keep and bear arms and this Court should apply strict scrutiny to § 922(g)(1).  Because the statute contains no uniform definition of the conduct that will result in the loss of the right to possess a firearm and instead relies on diverse state definitions, § 922(g)(1) cannot withstand strict scrutiny.  *See* 18 U.S.C. § 921(a)(20) ("What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.").  Moreover, § 922(g)(1) does not consistently restore the right to keep and bear arms and instead relies upon disparate state restoration schemes,

12

resulting in a lack of uniform application. *See id.* Because § 922(g)(1) lacks uniform application, it violates the Fifth Amendment's equal protection guarantee, and this Court should dismiss Mr. Bonner's indictment.

## V. Conclusion

WHEREFORE, for the reasons stated above, Mr. Bonner respectfully requests that this Court dismiss the indictment on any or all grounds articulated.

Respectfully submitted, this 15th day of April, 2024.

ARNETT JACKSON BONNER, DEFENDANT

By: */s/ Leilani L. Tynes*_____
Leilani L. Tynes (MSB # 100074)
Assistant Federal Public Defender
Southern District of Mississippi
2510 14th Street, Suite 902
Gulfport, MS  39501
Phone: (228) 865-1202
Fax:    (228) 867-1907
Email: leilani_tynes@fd.org
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I, Leilani Tynes, hereby certify that on this 15th day of April, 2024, I electronically filed the foregoing Memorandum in Support of Motion to Dismiss Indictment with the Clerk of the Court using the ECF system, which sent notification of such filing to all parties of record.

*/s/ Leilani L. Tynes*_____
Assistant Federal Public Defender

13